of America. Oral argument not to exceed 15 minutes per side. Albert Grasch for the appellant. Good morning. I'm Al Grasch. May it please the court. I am counsel for the plaintiff appellant Tiffany Anestis as executor of the estate of Cameron Anestis. Also on her own behalf asserting a loss of consortium claim and as mother and next friend of their infant child who has been identified as I.A. I ask to preserve three minutes for my argument please. This case arises out of the suicide of Cameron Anestis. A suicide that occurred on August 17th of 2009. Cameron was a 21 year old Iraqi war veteran, a marine. It occurred after he went to the Lexington V.A. facility and sought mental health care but he received improper negligence services while he was there and then he was turned away. It was care that violated not only the V.A.'s own policy and procedures but also violated the applicable state law standards of care. The issue before this court is whether 38 U.S.C. 511A, which is part of the Veterans Judicial Review Act, whether that precludes district courts from having jurisdiction over Cameron's negligence and medical malpractice claims. In order to answer that question I believe the court has to look carefully at exactly what Cameron's claims are or the estate's claims are. As I said he returned from Iraq. Not long after he returned his behavior started deteriorating. His family reached out to the V.A. and tried to get some help. They tried to get him to go to the V.A. initially. Initially he avoided and refused to go but then eventually he broke down and he did go to the V.A. He went to the Leastown Road facility which is their mental health clinic. Now it's not a walk-in clinic and he did not have an appointment but this happens frequently. The record shows that at the Lexington V.A. people without appointments mistakenly go there approximately once a month so it's not unusual. In fact it's frequent enough that the Lexington V.A. has a policy to handle this and the policy is critical to this court's analysis. The policy is the person is to be assessed whether they are in an emergency situation and if it's deemed that they are then they're either to be treated there at Leastown notwithstanding not having an appointment or they're to be transported by ambulance across town to the Cooper Drive facility where the emergency room is. Now in this instance Cameron was greeted by the intake receptionist Carol McIntosh. Ms. McIntosh has stated in a tape recorded statement that she spent about 30 minutes with him and she believed he was suicidal in an emergency situation. She also knew that there was no one available to see him there and she said she didn't try to get any mental health professional to see him even though she believed he was in a suicidal state because she knew there was no one available. Now according to the V.A.'s own policy at that point she needs to arrange for transportation by ambulance to Cooper Drive but she didn't do that. She sent him over to Cooper Drive but she did not transport him by ambulance. He goes to Cooper Drive we don't know with whom he actually spoke at the emergency room but someone wrongfully turned him away. Turned him away because they said he didn't have a form called a DD-214. Now the testimony is also unequivocal that he didn't need to have that form. No veteran needs to have that form and no veteran is ever to be turned away from care for not having that hard copy of that form with them. So he was wrongfully turned away. One question that I had when I was reading the pleadings about that particular argument that you're making right now is I did have a little bit of trouble figuring out what the relevance was of the V.A.'s policy with respect to these incidents and the reason that I'm asking the question and I'm intentionally staying away from whether whatever happened was in connection with benefits or it wasn't in connection with benefits. I don't read that into that but just on the policy issue there's not an independent cause of action that you can maintain under the V.A. Act or under state law for violation of a V.A. policy is there? If that was all we had. I'm asking specifically is there a cause of action about their failure to follow their own internal policies? No there is not. So then I was trying to figure out back to the bigger question what relevance does this policy at the two different locations have one way or the other? In other words who cares what the policy was to the issue that we have before us today? I'm a little uncertain about which policy you're asking about the DD 214 policy or the policy about transporting? I'm talking about basically every policy you said that they violated. In and of itself that does not constitute a cause of action. In and of itself that would be a violation of the V.A. Act. It would be irrelevant or it would be insufficient to establish a cause of action. Now I believe where it becomes relevant is we have expert testimony in the case that these policies that we're referring to are also consistent in fact are required under Kentucky state tort law as the standard of care. So these policies are consistent with the applicable standard of care. So we can forget the policies? Yes. And you're saying that when a person comes in under Kentucky law in the situation that this person was in that the law would be that you would determine whether the person was in an emergency situation and if that person was you'd find some way to make sure the person got treatment right there? Yes. Is that basically what you're saying? Yes. You can't send them away. Now I think where it becomes relevant and where we start talking about the V.A. policy is we've got this unusual situation where we have two facilities that are all part of the Lexington V.A. So we've got this standard of care, Judge Oliver, that if someone is deemed to be in an emergency situation you don't turn them away. Now we also have the factual situation where we have physically two facilities and on occasion at Leestown there's not the manpower to see them even if they are in an emergency situation. So where the policy becomes relevant is what did the V.A. do in order to comply with that standard of care? But you've still got to get back to the main issue, right, is whether this was a benefit determination or whether it was treatment. And your argument is it wasn't a benefit determination but that they refused to treat him medically, properly. That's your argument, isn't it? When he came in it was not a benefit determination at that point. Isn't that really where you've got to focus? Precisely. That is the precise issue that I think this court has to reach. Whether the services, benefit, treatment, whatever you want to call them, when he went to Leestown Road, whether that legally is a benefit, considered a benefit under Section 511A. And if it's not a benefit but it was treatment, you don't necessarily win. You're just trying to make an argument that the case shouldn't have been dismissed, right? That's exactly right. Because you could lose. I mean you could win, you could lose. Certainly could. I'm merely saying that there is sufficient evidence in the record to create a question of fact and the case should not be dismissed on jurisdictional grounds. Because it got dismissed with the district court in error holding that this was what Cameron did receive or did not receive when he went to Leestown Road, holding that that was a benefit as defined under Section 511A, which is a novel holding. But the reason I press you on the benefit issue is because if you're not careful, it'll make it sound like you think you should prevail on the case because they didn't do certain things and we don't have to decide that, whether you should actually prevail in the final analysis. Absolutely correct. You're absolutely correct. I'm interested in the same thing that Judge Oliver's in but with a slightly different twist. You want to stay away from this being a benefit that the VA Act required because that's a problem. So you want to characterize this as something else and you say, gee, we should have been able to get to that something else. It seems to me just logically speaking that we would have to have some assurance that you have a viable claim separate and independent from the failure to provide VA benefits in order for this whole thing to make any difference. So I first asked you whether you could prevail independent of the benefit theory because there was a violation of policy and you said, no, you can't do that. So then what I think you've said and what I believe you're pleading say is you point to what I think is something based upon state law, either a general duty to treat or something that's imposed upon hospitals, right? Yes. Now, that's the preface to what the narrow question is. I am at least curious how these state laws, whatever they are, and or the restrictions that are imposed upon hospitals, do they even apply to a government hospital? If it was a state hospital, I get that, but does state law control what a government hospital has to do when somebody presents themselves at the door? Yes, it does, and it certainly does in this instance. Part of what you're touching on is the EMTALA law, which requires hospitals and doctors, private hospitals and doctors, to provide care in emergency situations. You can't send someone away. That's the duty to treat. That's right, but EMTALA admittedly specifically excludes VA hospitals, so I don't get there there, but the VA hospital, the big VA hospital, as a large policy decision, has decided we are going to provide, under our humanitarian care exception, we are going to provide care to those who are in an emergency situation. So you're saying that if a non-veteran shows up at a veteran's hospital, clearly showing that there's an emergency, the VA has taken the position that it will in fact provide care to that person, regardless of their status, and that because that is their position, the state law requirement that imposes a duty to actually provide that care applies to the hospital? Yes, under state law, certainly there's this obligation to do that. The VA itself has made the policy decision that they're going to provide emergency care to anyone. Does that really answer the question that Judge McKee raised of how the state law actually applies to the VA hospital? I believe it does. Put another way, there's got to be a duty. Yes, of course there is. Saying that we might do this, we may do this, this would be a good idea, all of which seems to be true, is one thing, but if it's not a benefit, then the breach here has to flow from some duty we have to identify someplace else. Yes. If it's not ITALA, because that excludes VA, then what is the source of the duty? I realize that you don't want us to determine that now, but I just don't see why we would send that back if you can't tell us what that duty is. I think the source of the duty arises from the VA's policy decision that we're going to provide emergency care. You've got another step to go, don't you? Then you go to the Federal Tort Claims Act, right? Yes. Which says if you provide services that you will be liable to the extent that, I mean, one would be liable under state law, right? If you're going to agree to provide emergency care, you must do so in a non-negligent fashion. Right, right. If you're negligent, then there's liability under the Federal Tort Claims Act, and I think that's where we get. The VA made this policy decision that we're going to provide emergency care. Without regard to whether you're a veteran, eligible, ineligible, enrolled, not enrolled, we're going to provide it. Once they make that policy decision, then the care has to be provided non-negligently. In other words, in compliance with the applicable standards. They've agreed to do it, right? That's right. Then the Federal Tort Claims Act would say that they'll be liable to the same extent. That's right. Because if you think about it the other way. I've forgotten for a second. Did you bring this under the Federal Tort Claims Act? Yes, sir. Well, maybe the answer to my question is the Federal Tort Claims Act imposes an obligation on government employees that are consistent with state law. Does it not? It does. In other words, the choice of law provision under the Federal Tort Claims Act is state law. Exactly. So isn't that the simple answer to my more convoluted question? I apologize. I don't think I understood the question, but yes, it is. I believe that it is now. And if you think of the converse. A private actor under these circumstances would have breached a duty. Yes. And therefore, it's a government actor similarly. Right. The Federal Tort Claims Act says that if somebody's injured by a tort committed by a government employee, we're going to hold them to the same standards as somebody that's a private citizen. Generally speaking, I think. Exactly. And if you think about it in the converse, if you said there was no duty under this circumstance, then the VAs decided to provide emergency care. And whenever they did so and if they botched it up, there would be no duty. There would be no recovery, no ability to recover there. You've gotten me over my hurdle about how do you at least plead some sort of state cause of action. I got it. The final point I'd like to make is Section 511A has never been applied in any cases in this situation. It's always been applied where there's a context of a disability claim, some sort of claim for some sort of VA benefit. We don't have that here. This is strictly a medical malpractice claim, and Section 511A has never been applied as a bar to just a typical medical malpractice claim. Thank you. Thank you. May it please the Court, Henry Whitaker for the United States. This is a challenge to a VA benefit. A challenge to the failure of a VA facility to provide medical care is a benefit, as the courts have repeatedly held. And I'd like to point the Court in particular to the Ninth Circuit's en banc decision in the VCS case. In VCS, one important element of the plaintiff's claims was that the VA was not adequately providing emergency treatment to veterans who were at an imminent risk of committing suicide. And what the Ninth Circuit said in that case, and indeed it was undisputed in that case, was that Section 511, quote, Section 511 undoubtedly would deprive us of jurisdiction to consider an individual veteran's claim that the VA unreasonably delayed his mental health care. That was undisputed in that case. But mental health care is a benefit. Yes. So failure to provide it on a timely basis deals with the delivery of that benefit. Yes. Now this guy says, correctly or incorrectly, he's disclaiming reliance upon a benefit. He's saying you had a state law duty to treat him independent of VA benefits when he showed up. So what's wrong with that argument? Your Honor, the VA's policies and procedures with regard to the provision of emergency care at a VA facility just as much implicates VA policies and procedures with regard to the provision of benefits as anything else. And, again, that's VCS, Your Honor. That's the VCS decision in the Ninth Circuit. And, I mean, really what they are trying to do is Cameron Anestis on August 17, 2009, came to a VA facility claiming benefits as a veteran because he thought he was eligible for treatment as a veteran. That is what this case is about. He was seeking benefits as an eligible veteran. And they are essentially using this emergency care argument to plead around the fact this is precluded by the VGRA. That's exactly what they're doing, which seems to be permitted by the D.C. Circuit decision. No, I think that's not correct, Your Honor. The Thomas case, actually, Thomas v. Principi from the D.C. Circuit, really supports our position in this case. So, in Thomas, what happened was the VA was evaluating whether a guy was eligible for disability treatment on the basis of his mental health disability. And they diagnosed him with schizophrenia in the course of doing that. They didn't tell him about it. And they went on to deny him mental health care. And what the D.C. Circuit said in Thomas was, well, look, to the extent you're simply challenging the fact that the VA failed to inform you about the diagnosis, that would be actionable. That's independent of the actual benefits decision. But to the extent you are challenging the fact that they didn't provide you with mental health care, that is precluded by the VGRA. And that is this case, Your Honors. They are complaining about the fact that Cameron and Estes was denied mental health care. Let me just see. I understand your argument about benefits. But I'm trying to see whether what you're saying would kind of swallow up the ability to get medical treatment. If you were to take your argument to its logical extreme, it would be any benefit that a veteran got. I mean, they're all benefits. So if you go there and you get benefits because you're a veteran, you get treatment, medical, and we know that's not true. You get treatment by a doctor. There's no malpractice that you can sue for. We know you can do that because that happens every day. Every day. So here, isn't the fact that the guy came in seeking treatment and he in fact was seen by someone, isn't that important? He saw the person up front. She didn't just say, go away. She started to assess him. She started to look at him. She started to make a determination as to whether he had a problem. And she determined he did have a problem. So she went down the road of providing the kind of assistance that you do at a medical facility, and then she went wrong after that, or arguably went wrong after that. Because instead of then doing the next thing, what do you do with this person? Now that I've assessed that he's a serious problem, she didn't do the next thing. She didn't send him to the facility. She sent him away. Isn't that the difference between what you argue the benefit cases? This person was on the road to being assessed. No, not at all, Your Honor. Several things in response to that. First, he had an informal conversation with a check-in clerk, Carol McIntosh. Isn't that a factual issue for trial if we got past the jurisdictional hurdle? Well, first of all, it's really hard to see how that could have made a difference. He did, in fact, go to Cooper Drive, or at least the plaintiffs say he did. So he did, in fact, do what they say that Carol McIntosh should have done, send him for treatment. No, no, they didn't say she should have sent him the way she did. The argument was that if a person is assessed to be suicidal or in serious danger, that you transport them there by ambulance, which puts you in a different position for treatment when you get there. Carol McIntosh, a check-in clerk, did not perform a medical assessment of Mr. Anestis' condition. She was not a health care provider. In any event, what they're really complaining about is the fact that Carol McIntosh didn't send him to a health care provider. They are complaining about the fact, in other words, that Carol McIntosh didn't provide him with VA medical treatment. That is a determination with regard to the provision of VA benefits. This is not, Your Honors, a medical malpractice case on the basis of the fact that Carol McIntosh had an informal private conversation with Cameron Anestis. I don't understand at this jurisdictional stage how you get to characterize this as an informal private conversation. She's there. She's at the desk. The VA says they have to assess people when they come in, but they don't put a doctor there. They put this woman, and we'll assume for a second that she's admittedly unqualified, but you're the one that chose her. So then you can't disclaim what she was doing because she was unqualified because you didn't put the qualified person there. I'm not disclaiming anything, Your Honor. I'm simply pointing out that that kind of claim, the policies with regard to who should be making decisions about how to provide medical care, those are VA policies and procedures with regard to the provision of veterans' benefits. Let's assume for a second. I'm not sure where this hypothetical will go. Let's assume for a second that they put a doctor at the desk because so many veterans are showing up with stress syndromes, and that person has had his or her license revoked, and they're just a bad doc. So they misdiagnosed somebody at the desk as to whether they should be admitted or not. That's malpractice, right? Depending on the facts, there could be a malpractice claim. My hypothetical could be construed, could be massaged to be a malpractice claim, right? I mean, there are facts under which you can bring a malpractice claim. That's true. So why can't this veteran at least get by the jurisdictional hurdle to see if he is or is not pleading a malpractice claim that's based upon state law, as opposed to the VA requirement to provide benefits? First of all, you do look to the substance of the claim. The VA preclusion cases say you look at the substance of the claim. Look, if Carroll McIntosh had put Cameron Onestis on a gurney and operated on him and had made some mistake or had, let's say, punched him in the nose, sure, yeah, there might have been some liability for that. But that's not what she did. They're complaining about the fact that she didn't send him to a VA medical provider. But you said if she'd made a mistake and punched him or did something else, she'd be liable. When she'd make a mistake and not send a guy who's suicidal to call an ambulance, which they say they would normally do, to take him to the facility but let him walk over there, go over there himself, she wouldn't be liable. I don't understand the difference. Well, there's a distinction, Your Honors, between, and this is what the VGRA sets out, between challenges to benefits determinations and torts that are independent of the benefits determination. I mean, again, the fact that she may have made a mistake in not providing him benefits, I mean, that's core VGRA preclusion. I mean, for example, in- Benefits service. Why do you call it a benefit? I mean, once you're looking at someone and you see they're in bad shape and you would normally then provide, get an ambulance and take them to a place, and you're saying that's a benefit determination as opposed to making a mistake in terms of medical services that would have been provided. It's absolutely a benefits determination. Well, you may say so, but- It is so defined in the VA's regulations. I mean, again, the provision of VA mental health care, VCS, Thomas v. Principi, the Larrabee case from the Second Circuit, it's very well established that that is a benefit. And, again, there's no dispute here that Thomas, the analytical framework in Thomas v. Principi from the D.C. Circuit controls. I mean, that case- The problem that I have with that argument is that you're saying that all treatment, and let's call this treatment or failure to treat, all treatment is a benefit. It seems to me that's the essential core of your argument. Not at all, Your Honor. That would mean anything that happens at a VA facility is going to be barred because the treatment could be characterized as a benefit. If it really were true in this case that somebody had undertaken a course of treatment and violated some duty of care, yes, that would be potentially actionable as a claim for medical malpractice. That is not what happened here, Your Honors. And, again, with regard to whether Cameron was in an emergency state and Carol McIntosh really should have driven him to call an ambulance, what really happened here? They allege that he drove himself to Cooper Drive and was turned away because he didn't have his DD-214. By the way, square policy and procedure with regard to the provision of benefits, the documentation that is required to establish eligibility, DD-214, absolutely something that should go to the Veterans Courts. He drives himself to his parents' house. He takes a nap. His father cancels a mental health appointment he had scheduled for him that very day because he was sleeping. He drives himself to his own house, sees his wife. His wife testifies in the deposition, I didn't consider taking him to the emergency room or to a mental health care provider. And it is only after he has a violent confrontation with his wife that the tragic event that underlies this lawsuit happens and he commits suicide. You are in causation. That's all causation. No, I think it illustrates that in substance this is not a claim about emergency care. Let's assume for a second that he shows up at this first facility. He's diagnosed by a qualified person with a real diagnosis that he's suicidal. So they don't have anybody there to treat him, so they put him in the ambulance and they send him to the facility that actually has qualified medical people there. Are you saying that if this guy showed up in an ambulance with notes from this intake clerk that said he's suicidal and you need to see him, they would have at that point taken him out of the ambulance, taken him off the gurney, said, you don't have a DD-214, and sent him out the door? No, absolutely. It's impossible to believe. Right. It is impossible to believe because our policy is indeed the fact that we will provide. We're not going to turn people away at a VA. You just said that it was a requirement that you have to have your documentation. Now, maybe I misunderstood because you do talk kind of fast, and I admire how fast you get things said, but you did say that, by the way, it's required that you have the documentation. Well, as a general matter, Your Honor, absolutely. I mean, as a general matter, the provision of VA care at VA hospitals happens to veterans who are eligible. Now, it's true that there is a policy. Have you ever tried to get a DD-214? No, Your Honor, I have not. I have, and it takes months to get one. So let's assume you are a returning veteran, and then post-traumatic stress syndrome, you've lost your DD-214, which I assume you get when you leave active service. That was so long ago I don't remember. Then three years later, you got this crisis because of what you experienced. To get that form, it's going to take months. So to say, oh, no form, we're not going to treat you in the meantime, come on. Wait a second. A couple of things. First of all, the testimony in this case shows that returning veterans who return from their deployments are routinely given their DD-214s when they return. That's number one. Number two, look, it's absolutely true. If you don't necessarily need a DD-214 to enroll, the VA's policy is to independently attempt to verify eligible service. That's absolutely true. What happened in this case is Cameron and Nessus applied for benefits, and we tried to verify his service. And we did verify that he served, even though he didn't submit any documentation that he was supposed to with his application, we verified his service. But what we couldn't verify was the fact that we didn't have sufficient information to think that he was served in combat. So it's true that there are some circumstances where you don't need your DD-214. But it's also true that if we can't verify your service, yes, you need to substantiate it in some way. It doesn't necessarily have to be due to DD-214. But I would say it's all irrelevant, isn't it? Because the circumstances, you've already admitted that if you go there and you're found to be in an emergency situation and they determine you need to be transported by ambulance, and you are, that you don't need the form because you're in bad enough shape that they're going to go ahead and treat you. That's what happened to him here, right? No, no, that's not what happened. I mean, in exceptional cases. He didn't get there. No, Your Honor, but it does illustrate that what this is, is a challenge to the implementation of VA policies and procedures with regard to the provision of VA medical care at VA medical facilities to a veteran who went there as a veteran saying he was eligible for care. Well, I agree that if they were framing the complaint to say, didn't have my form, didn't get treatment, that seems to go to benefits. So that's why I started out asking, you know, what difference do all these policies matter? So eventually he has to get to the point that there was an obligation to treat this man independent of his entitlement to benefits under the VA laws and regulations. So that's what we're really talking about. So I'm just curious because your red light has now come on. What is your view as to whether there is, theoretically, I'm not asking you to concede it, but what is your view as to whether there are independent state law duties that are imposed upon VA facilities that are incorporated then through the Federal Tar Claims Act? Well, we certainly took, we moved to dismiss below, Your Honor, on the basis of the fact that there was no state law duty in this case. Our view is certainly that there wouldn't be any such duties. But with regard to your... But you didn't say there weren't such duties because they didn't exist. You said that you weren't responsible because they were benefits. Am I right about that? No, I think we said both of those things. I think we said both of those things below, Your Honor. And again, we haven't raised that in an alternative ground for affirmance in our appeal. But I do think we said both of those things. But I think the policies are relevant in this sense. The core of VGRA preclusion is when you are challenging policies and the implementation of those policies with regard to benefits. So the fact that the plaintiff keeps talking about the fact that we allegedly violated our own policies only underscores that this is really a challenge to a benefits determination. And that's why VGRA preclusion applies. I'm happy to answer any further questions. I see my red light is on. Thank you, counsel. Butler? Just briefly, Your Honor. As I said before, every case that's relied upon by the U.S. is dealt with with the VGRA in the context of deciding a disability benefits or pension benefits or some sort of benefit under an established VA program. How about the Ninth Circuit case? Can you talk about that since he talked about the Ninth Circuit case? The Veterans for Common Sense, the BCS case? Yes, Your Honor. That case, in my opinion, is not irrelevant, but it doesn't apply factually to this because that was a challenge to the programs. They were trying to base it on the averages of time to process, and they were saying that the deliverance of mental health care, on average, to all veterans was being unreasonably delayed. The processing of disability benefits claims, on average, was being unreasonably delayed. They tried to use averages, as this court addressed in Beeman, and saying, well, that doesn't get you around the VGRA because if you've got to look at averages, you've got to look at the individual claimants. So that would necessarily require a review of individual claims for disability benefits. Again, like the other cases I was mentioning, they're all in the context of someone seeking disability benefits or a pension benefit or some other benefit pursuant to an established program of the VA. If their position is accepted, you could never have under the Federal Tort Claim Act any medical malpractice actions. You certainly could never have one that dealt with a failure to treat. Thomas itself says, the quote in Thomas is, we reject the idea that all actions or inactions are precluded by the VGRA. In other words, they are saying some, you still have Federal Tort Claim Act liability. It also says in Thomas, for instance, if a doctor leaves a sponge in somebody, yes, you've got Federal Tort Claim liability. If a doctor cuts off the wrong leg, you've got Federal Tort Claim liability. Let me bring it a little bit closer. A triage nurse, somebody goes in and sees a triage nurse, they're having heart attack symptoms. The triage nurse negligently sends them away, denies treatment. Clearly, there would be potential liability under the Federal Tort Claims Act. So we end where we started. Whether or not what Cameron and Nestis received or didn't receive, whether that was a benefit, as benefit is defined under Section 511A. And I certainly take the position that it was not. What he went in for was medical treatment that had nothing to do with his application for VA benefits or VA eligibility. That was completely irrelevant to any of this. It didn't matter if he was eligible, ineligible. It didn't matter if he was a veteran. It had nothing to do with any kind of the administration of benefits pursuant to any VA benefit program. And for those reasons, Your Honor, we ask that the district court's dismissal be vacated and the case remanded for further proceedings. Thank you. Thank you, counsel. The case will be submitted.